No. 60,882

Lamar Gilmore, *Appellant*, v. Kansas Parole Board, *Appellee*.

No. 60,905

John Stasse, *Appellee*, v. Kansas Parole Board, *Appellant*.

No. 61,030

Robert E. Murphy, *Appellee*, v. Kansas Parole Board, *Appellant*.

No. 61,031

Gary Dean Darby, *Appellee*, v. Kansas Parole Board, *Appellant*.

No. 61,032

Joseph Dyche, *Appellee*, v. Kansas Parole Board, *Appellant*.

(756 P.2d 410)

Opinion filed May 23, 1988.

Opinion filed May 23, 1988.

*William F. Bradley, Jr.*, of Martindell, Swearer, Cabbage, Ricksecker & Hertach, of Hutchinson, argued the cause and was on the brief for appellant Lamar Gilmore.

*John K. Bork*, assistant attorney general, argued the cause and was on the brief for appellant and appellee Kansas Parole Board.

*Edward V. Byrne*, of Byrne Law Offices, of Olathe, argued the cause and was on the brief for appellees John Stasse, Robert E. Murphy, Gary Dean Darby, and Joseph Dyche.

The opinion of the court was delivered by

MILLER, J.: Lamar Gilmore, John Stasse, Robert E. Murphy, Gary Dean Darby, and Joseph Dyche are all in the custody of the Secretary of Corrections of the State of Kansas, following their respective convictions for various felony offenses. Each petitioner met with the Kansas Parole Board, and each was denied parole. Petitioners then commenced separate actions against the Kansas Parole Board, claiming that the reasons given by the Board for denying parole do not comply with constitutional and statutory requirements, and petitioner Gilmore also contends that the "unanimous vote rule," implemented by the Board, violates his constitutional rights.

The district court of Reno County denied Gilmore's petition for habeas corpus, finding that he has no constitutional or inherent right to parole; that the reasons set forth by the Board for denial of parole were sufficient; and that the Board has the authority to adopt the "unanimous vote rule." On the other hand, the district court of Leavenworth County granted the petitions of Stasse, Murphy, Darby, and Dyche, finding that the Board had not furnished each of them with specific, articulated reasons for denial of parole, and the court ordered the Board to furnish a new parole hearing for each of those petitioners, and directed that a detailed statement of reasons be furnished if the Board denied parole to any of those men. Gilmore appeals from the decision of the Reno District Court, and the Kansas Parole Board appeals from the decision of the Leavenworth District Court. All five cases were consolidated for hearing before this court.

The first issue is whether the reasons given by the Parole Board for denying parole to each of the petitioners complies with constitutional and statutory requirements. We turn first to the statutory law. K.S.A. 1987 Supp. 22-3717(h) provides in applicable part:

"Whenever the Kansas parole board formally considers placing an inmate on parole and does not grant the parole, the board shall notify the inmate in writing of the reasons for not granting the parole."

The Kansas Administrative Regulation, K.A.R. 45-4-7 (1987 Supp.), provides not only for the furnishing of written reasons for denial of parole but also for recommendations. The regulation reads:

"Inmates who have not been granted parole shall be furnished written reasons for the board's decision as soon as practical through the unit team as well as any recommendations as to the manner in which the inmate may improve the inmate's status at the designated pass date."

## The Reno District Court found:

"The reasons set forth by the Kansas Parole Board for denial of Petitioner's parole request were sufficiently stated to show that the Board considered appropriate information to deny the Petitioner's parole."

## The Leavenworth District Court found that

" 'boiler plate' language . . . is routinely and customarily employed by respondent Kansas Parole Board in denying parole *en masse* to applicants who in fact may be quite dissimilarly situated. Petitioners' contention that they and other inmates have not been afforded individually-tailored explanations for the denial of their parole applications is well established by the testimony and exhibits presented, and respondent has produced no evidence to the contrary . . . ."

Let us now examine the reasons advanced by the Board in denial of petitioners' parole. Each of the petitioners received a written notification, listing four or five reasons why parole was denied. One paragraph appears in all of the documents. It reads:

"The [Parole] Board recommends that you cooperate with institutional staff, participate in programs recommended by the staff, and maintain a good conduct record, all of which will be considered by the [Parole] Board at your next scheduled hearing."

All except the notice to Murphy contained the following two paragraphs:

"In view of the serious nature and circumstances of the offense, the Parole Board feels that your release at this time would depreciate the seriousness of the sentence which was imposed by the court, promote disrespect for the law, and is incompatible with the prevailing social opinion.

"The Parole Board also notes strong objection from the community regarding your parole at this time."

The notice to Darby and Stasse contained the following paragraph:

"The [Parole Board] recommends that you participate in mental health counseling prior to your next scheduled hearing."

The following paragraphs appeared in only one of the notices. The one provided to Dyche said:

"The [Parole Board] recommends that you participate in sex offenders program prior to your next scheduled hearing."

Gilmore's said:

"The Kansas Parole Board also recommends that you participate in continued mental health counseling for sexual offenders and anger management, and substance abuse counseling prior to your next scheduled hearing."

Murphy's notice included the following four paragraphs:

"From an assessment of your case, it appears you have certain behavioral problems which should receive further attention prior to positive consideration for release on parole.

"You have a hostile attitude.

"The [Parole] Board recommends that you cooperate with institutional staff, participate in programs recommended by the staff, and maintain a good conduct record, all of which will be considered by the [Parole] Board at your next scheduled hearing.

"The Kansas Parole Board also recommends that you participate in mental health sexual offenders counseling and adjustment counseling prior to your next scheduled hearing."

Finally, Stasse's notification included this paragraph:

"Because of your prior criminal history, the [Parole Board] feels your continued confinement within the institution will enhance your capacity to lead a law abiding life when released at a later date."

In *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979), the United States Supreme Court recognized that the rationale behind requiring reasons for a denial of parole is to guide the prisoner in future conduct. 442 U.S. at 15-16. The opinion, however, does not require that a separate and individually written statement, in language entirely different from that written for any other inmate, be provided. Similarly, neither the Kansas statute nor the administrative regulation requires separately written and distinctive language addressed to each inmate. It is obvious that the Board has formulated certain language which it uses to address most of the common reasons and recommendations. The Board, however, does not issue the same statement to each inmate. The reasons and recommendations appear to be carefully selected in order that each inmate may know the reasons for denial of parole and may receive guidance as to his (or her) further conduct and activity while in custody.

The Board is required by K.S.A. 1987 Supp. 22-3717(h) to interview each inmate. Under 22-3717(g), the Board is required

to consider all pertinent information regarding each inmate, including, but not limited to, the circumstances of the offense; the presentence report; the previous social history and criminal record; the conduct, employment, and attitude of the inmate in prison; and the reports of any physical and mental examinations. The argument is advanced that the crime itself cannot be the reason for denial of parole unless all inmates convicted of a certain crime are denied parole. In support of this contention, petitioners cite *U. S. ex rel. Scott v. Ill. Parole and Pardon Bd.*, 669 F.2d 1185, 1190 (7th Cir. 1982). That case is distinguishable. The Seventh Circuit found that the Illinois parole statute created a liberty interest in parole release. However, the Kansas statute, which we shall discuss later, does not create a liberty interest. Thus, the question is whether the reasons for denial comply with Kansas statutory law. Certainly the nature of the crime is a consideration to be taken into account and thus can be cited as a reason for denial of parole. K.S.A. 1987 Supp. 22-3717(g) requires the Board to consider the circumstances of the offense of the inmate. The acts of one person in committing an offense may be quite different and much less or much more shocking and heinous than the acts of another person in committing the same statutorily defined offense.

That a parole board may properly consider the nature of the crime is answered in *Greenholtz*, where the United States Supreme Court stated:

"A state may, as Nebraska has, establish a parole system, but it has no duty to do so. Moreover, to insure that the state-created parole system serves the public-interest purposes of rehabilitation and deterrence, the state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority. It is thus not surprising that there is no prescribed or defined combination of facts which, if shown, would mandate release on parole. Indeed, the very institution of parole is still in an experimental stage. In parole releases, like its siblings probation release and institutional rehabilitation, few certainties exist. In each case, the decision differs from the traditional mold of judicial decisionmaking in that the choice involves a synthesis of record facts and personal observation filtered through the experience of the decisionmaker and leading to a predictive judgment as to what is best both for the individual inmate and for the community. This latter conclusion requires the Board to assess whether, *in light of the nature of the crime*, the inmate's release will minimize the gravity of the offense, weaken the deterrent impact on others, and undermine respect for the administration of justice. The entire inquiry is, in

a sense, an 'equity' type judgment that cannot always be articulated in traditional findings." (Emphasis added.) 442 U.S. at 7-8.

We conclude that the reasons given by the Board in written form to each inmate upon denial of parole comply with the statutory requirements. Though the Board uses the same language to describe the same reasons for denial or recommendations for the guidance of the inmates, the notices are tailored to each individual inmate. We find no valid objection to the notices employed.

We turn now to whether the petitioners have a liberty interest in parole release which is protected under the Due Process Clause of the Fourteenth Amendment. In *Board of Regents v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972), the United States Supreme Court defined a property interest. The Court said:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

Similarly, to have a liberty interest in parole release, an inmate must have more than an abstract desire for it or a unilateral expectation of it. Instead, he must have a legitimate claim of entitlement to it under the statutes which provide for parole. In *Greenholtz*, the Court said:

"That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained. *Board of Regents v. Roth*, 408 U.S. [564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972)]. To that extent the general interest asserted here is no more substantial than the inmate's hope that he will not be transferred to another prison, a hope which is not protected by due process." 442 U.S. at 11.

However, in both *Greenholtz* and *Board of Pardons v. Allen*, 482 U.S. 369, 96 L. Ed. 2d 303, 107 S. Ct. 2415 (1987), the United States Supreme Court found that the Nebraska and Montana statutes provided a liberty interest in parole release because of the mandatory language of the respective state statutes. The Nebraska statute said that:

" 'Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, *it shall order his release* unless it is of the opinion that *his release* should be deferred because [of one of several reasons].' " (Emphasis added.) Neb. Rev. Stat. § 83-1,114(1) (1976), quoted in *Greenholtz*, 442 U.S. at 11.

The *Greenholtz* court held that the establishment of a parole system by the state does not automatically give rise to a protected liberty interest in parole. The language of the Nebraska statute, however, was mandatory, and the court held that such language created an exception to the general rule and created a liberty interest in parole. Thus, to satisfy due process, the Nebraska Parole Board was required to provide each inmate an opportunity to be heard, and to notify the inmate of the reasons for denial—a statement of those respects in which the inmate fell short of qualifying for parole. The Kansas Board, under statute and regulation, takes similar action.

The Montana statute read:

" '(1) Subject to the following restrictions, the board *shall release on parole* [certain persons] . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community[.]

. . . .

" '(2) A parole shall be ordered only for the best interests of society . . . .' " (Emphasis added.) Mont. Code Ann. § 46-23-201 (1985), quoted in *Board of Pardons v. Allen,* 482 U.S. at 376.

The Kansas statute, K.S.A. 22-3717(e), does not say that the Kansas Parole Board "shall release on parole" or "shall order his release." Instead, the Kansas statute merely empowers the Board to place one on parole when the Board, in the exercise of its discretion, believes that the interests of the prisoner and the community will be served by such action. The statute provides:

"[T]he Kansas parole board *shall have the power* to release on parole those persons confined in institutions who are eligible for parole when, in the opinion of the board, there is reasonable probability that such persons can be released without detriment to the community or to themselves." (Emphasis added.) K.S.A. 1987 Supp. 22-3717(e).

In *Board of Pardons v. Allen,* 482 U.S. 369, the Court stated that when statutes or regulatory provisions are phrased in mandatory terms or explicitly create a presumption of release, courts find a liberty interest. Conversely, statutes or regulations that provide that a parole board "may" release an inmate on parole do not give rise to a protected liberty interest. In *Parker v. Corrothers,* 750 F.2d 653 (8th Cir. 1984), the Eighth Circuit found

that the Arkansas parole statute did not create a liberty interest. That statute, Ark. Stat. Ann. § 43-2804 (1977), like the Kansas statute, provides: "The Parole Board shall have the power . . . ."

Upon consideration of the entire statutory scheme in Kansas, we conclude that the various factors which the Board is directed to consider are procedural guidelines and not a limitation upon the Board's discretion. The Board is empowered to grant parole, but only in the exercise of its discretion, after considering the facts of the offense and the background, record, history, and situation of each prisoner. While the Board's action in *revoking* parole involves a liberty interest, *Johnson v. Stucker*, 203 Kan. 253, 259, 453 P.2d 35, *cert. denied* 396 U.S. 904 (1969), and *Morrissey v. Brewer*, 408 U.S. 471, 481, 482, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), the Kansas parole statute does not give rise to a liberty interest when the matter before the Board is the *granting* or *denial* of parole to one in custody. Parole, like probation, is a matter of grace in this state. It is granted as a privilege and not as a matter of fundamental right. *State v. DeCourcy*, 224 Kan. 278, Syl. ¶ 3, 580 P.2d 86 (1978). We hold that K.S.A. 1987 Supp. 22-3717 does not create a liberty interest in parole. The notices furnished to petitioners upon denial of parole are not constitutionally deficient.

Gilmore contends that the present policy of the Board to require a unanimous vote before parole is granted to a person convicted of a Class A or B felony violates article I, section 9 of the United States Constitution, and constitutes the application of an ex post facto law. Gilmore was convicted of rape, and began serving a ten-year to life sentence on February 26, 1980. In February of 1986, he became eligible to meet with the Board, but parole was denied. At the time of his conviction, Kansas had a five-member Adult Authority. An affirmative vote of a majority of the Authority, three members, was required before parole could be granted. In 1984, the Kansas Legislature amended K.S.A. 22-3707 and 22-3707a, changing the name of the Kansas Adult Authority to the Kansas Parole Board, and reducing the membership to three. K.S.A. 1987 Supp. 22-3707, -3707a. Although not required by statute, the Board has adopted a policy whereby it will grant parole to those convicted of A and B felonies only upon a unanimous vote of the Board.

Gilmore relies upon the decision in *United States ex rel. Steigler v. Board of Parole*, 501 F. Supp. 1077 (D. Del. 1980). At the time Steigler was convicted and sentenced, the Delaware statutes provided that parole was to be determined by a simple majority of a five-member Board. Before Steigler became eligible for parole, the Delaware statute was amended to require an affirmative vote of four of the five members before parole could be granted to inmates convicted of certain serious crimes. Steigler received a letter after his parole was denied, stating that three members of the Board had voted for parole but the law then required four affirmative votes before parole could be granted. The *Steigler* court, admitting that the amendment could be characterized as procedural rather than substantive, noted that the clear purpose of the statutory change was to make parole substantially more difficult for particular classes of defendants and to require a greater quantity of proof of fitness for parole than would have been required under the prior law. Holding that the law violated the ex post facto clause of article I, section 10, of the United States Constitution the *Steigler* court relied upon *Thompson v. Utah*, 170 U.S. 343, 42 L. Ed. 1061, 18 S. Ct. 620 (1898), finding that case indistinguishable. Thompson had been charged with a felony and tried in the territory of Utah before a jury composed of twelve persons. That conviction was set aside, and after Utah was admitted to the Union, Thompson was retried and convicted by a jury composed of only eight persons. The United States Supreme Court held that Thompson's right to a twelve-member jury vested at the time of his first trial.

We find both *Steigler* and *Thompson* distinguishable. If Thompson's right to a twelve-person jury vested at the time of his first trial, then Gilmore's right to a parole board of a certain size vested at the time of his first appearance before the Board—which occurred after the Board was reduced to three members. At the time Gilmore was convicted, the Board consisted of five members. The statute then in force, K.S.A. 1980 Supp. 22-3717, like the later amendments, did not fix the number of members of the Adult Authority who had to vote in favor of parole before one could be granted. The Authority, by internal rule, could have required 3, 4, or 5 votes. At that time, 1980, the

Authority went by the majority vote rule, and only three affirmative votes were required before parole could be granted. At the present time, the Board consists of only three members and, under the Board's internal rule, all three must agree before Gilmore can be placed on parole. In *Steigler*, state statutory law originally required a 60% majority, and the Delaware Legislature raised the required majority to 80%, or four affirmative votes on the five-person Board. Here, the legislature has not fixed the voting requirements for the Board, but has left that matter to the discretion of the Board itself. We conclude that the matter is internal and procedural, and not a substantive change. Gilmore has no liberty interest in parole under Kansas law, and this procedural change is not unconstitutional. We find no ex post facto violation.

The judgment of the district court of Reno County in the case of *Lamar Gilmore v. Kansas Parole Board* is affirmed. The judgment of the Leavenworth District Court in the consolidated cases of *John Stasse v. Kansas Parole Board, Robert E. Murphy v. Kansas Parole Board, Gary Dean Darby v. Kansas Parole Board,* and *Joseph Dyche v. Kansas Parole Board* is reversed.