NOT DESIGNATED FOR PUBLICATION

No. 112,850

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES E. TACKETT, JR.,
*Appellant*,

v.

REX PRYOR (WARDEN) (KANSAS PRISONER REVIEW BOARD),
*Appellees*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; DAN K. WILEY, judge. Opinion filed September 4, 2015. Affirmed.

*Michael G. Highland*, of Bonner Springs, for appellant.

*John Wesley Smith*, assistant attorney general, and *Derek Schmidt*, attorney general, for appellees.

Before LEBEN, P.J., HILL and ATCHESON, JJ.

*Per Curiam*:  James E. Tackett, Jr., an inmate at the Lansing state prison, appeals the dismissal of his habeas corpus petition challenging the decision of the Kansas Prisoner Review Board to deny him parole. The Leavenworth County District Court found Tackett failed to assert any constitutional defect in the Board's determination. We, in turn, find no error in that call and affirm the district court.

In 1994, the Sedgwick County District Court sentenced Tackett to three consecutive indeterminate terms of imprisonment:  5 to 20 years for aggravated battery; 15 years to life for kidnapping; and 5 to 20 years for indecent liberties with a child.

1

Tackett became parole eligible in 2013. The Board denied him parole and postponed any further consideration for 5 years. The Board cited as reasons the serious circumstances of the crimes, objections to Tackett's early release, and his disciplinary record while incarcerated. The Board offered no elaboration on those reasons in its written notice of the denial.

Tackett filed a petition, as permitted in K.S.A. 60-1501, challenging the Board's decision on the grounds he had been deprived of due process and equal protection, thereby violating his constitutional rights protected in the Fourteenth Amendment to the United States Constitution. The district court held a nonevidentiary hearing at which lawyers for Tackett and the Board argued the matter. In a written ruling, the district court found no constitutional deprivation. Tackett has appealed.

When the district court denies a 60-1501 petition without hearing evidence, we are in an equally good position to determine if the petition and the relevant record support a cognizable claim. Accordingly, we owe no particular deference to the district court's ruling. See *Johnson v. State*, 289 Kan. 642, 648-49, 215 P.3d 575 (2009). A 60-1501 petition must describe a harm or injury to a person being held in government custody rooted in "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." 289 Kan. at 648. A claim will lie if a governmental agency unlawfully detains a person; the detention would be a constitutional violation. The Board could not arbitrarily deny parole to an inmate—by, for example, flipping a coin to make the decision—or base those decisions on protected class characteristics, such as race. See *Parks v. Kansas Prisoner Review Board*, No. 111,412, 2014 WL 5801346, at *2 (Kan. App. 2014) (unpublished opinion), *rev. denied* ___ Kan. ___ (March 12, 2015); *Galloway v. Kansas Parole Board*, No. 110,637, 2014 WL 2229548, at *1 (Kan. App.) (unpublished opinion), *rev. denied* 300 Kan. 1103 (2014).

Under Kansas law, parole remains discretionary with the Board. See K.S.A. 2014 Supp. 22-3710; *Bohanon v. Heimgartner*, No. 109,023, 2013 WL 3970213, at *3 (Kan. App. 2013) (unpublished opinion) (citing controlling cases). The denial of parole does not itself result in unlawful detention; rather, the prisoner simply must continue to serve a lawfully imposed term of incarceration. The Kansas Supreme Court has held that a prisoner, therefore, has no protected legal right to parole from a criminal sentence. *Gilmore v. Kansas Parole Board*, 243 Kan. 173, 178-80, 756 P.2d 410, *cert. denied* 488 U.S. 930 (1988); see also *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 11-12, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979) (Nebraska statutory scheme provided parole shall be granted in certain circumstances—unlike Kansas law—thereby creating a liberty interest requiring some measure of due process protection). A Kansas prisoner cannot assert a constitutional deprivation based on a purported lack of procedural due process in a parole hearing itself—in contrast to a decision made arbitrarily or based on impermissible prejudice.

On appeal, Tackett first contends the generic description of the reasons the Board gave for denying him parole demonstrate the arbitrary and capricious character of the decision. But he is mistaken.

Tackett says the Board's reliance on the circumstances of his crimes is improper because they are immutable and, thus, can't be "subject to change or improvement." While those historical facts are fixed, that doesn't render the Board's decision arbitrary or otherwise improper. A particular kidnapping properly could be viewed as considerably worse than others if the victim were held for an extended period in oppressive conditions or repeatedly threatened with physical harm. That kidnapping arguably would warrant greater retribution than others, so the perpetrator legitimately could be denied parole for that reason. Similarly, the Board could properly weigh the circumstances of a crime against the perpetrator's efforts at rehabilitation in prison. Tackett, of course, is well aware of what he did and makes no argument that the facts of those offenses make him

somehow less blameworthy or less deserving of retribution. Nothing in the Board's consideration or weighing of the offenses deprived Tackett of a constitutional protection against arbitrary or impermissibly prejudicial decisionmaking.

Tackett contends the Board acted arbitrarily in relying on the objections to his parole request and complains about the lack of specificity depriving him of the ability to "offer any form of meaningful rebuttal." The complaint, as Tackett has framed it, really goes to the sufficiency of the procedural due process afforded him. See *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citation omitted.]"); *State v. King*, 288 Kan. 333, 354, 204 P.3d 585 (2009). But, as we have said, potential parolees have no procedural due process protections with regard to the Board's review.

Tackett also contends the mere mention of his disciplinary record while in prison reflects an arbitrary consideration of his parole request. Again, we disagree. As with his criminal history, Tackett is well aware of what he has done in prison. His record shows scores of violations of prison rules and regulations, some serious and others comparatively minor. But the number of violations suggests Tackett's inability to conform to rules—a characteristic that could be troublesome in the far less structured environment of parole. The Board can and should consider an inmate's disciplinary record. Tackett has not shown how that consideration led to an arbitrary outcome in his case.

Next, Tackett argues that Kansas inmates actually have a protected liberty interest in parole and must be afforded procedural due process. He says the United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), undercut the legal foundation for the holding in *Gilmore*, 243

Kan. at 178-80. But Tackett's argument misreads *Sandin*, as the panel in *Parks* recognized:

> "In [*Sandin*], the Court held that regulations related to the day-to-day management of penal institutions or the terms and conditions of confinement of inmates do not create protected liberty interests for those prisoners simply because they are written using mandatory rather than discretionary language. See 515 U.S. 482-87. The *Sandin* decision did not deal with or affect the determination of a prisoner's liberty interest, if any, in parole or some other form of early or conditional release from incarceration. See *Chappell v. Mandeville*, 706 F.3d 1052, 1063-64 & n.5 (9th Cir. 2013); *Ellis v. District of Columbia*, 84 F.3d 1413, 1418 (D.C. Cir. 1996) (*Sandin* did not overrule *Greenholtz* with respect to liberty interests in parole); *Valles v. Busby*, No. CV I4-1360-GAF, 2014 WL 1614615, at *2 n.4 (C.D. Cal. 2014) (unpublished opinion). In turn, Parks' argument that he has some sort of liberty interest in parole requiring procedural due process protections fails." 2014 WL 5801346, at *2.

We agree with the assessment in *Parks* and reject Tackett's point on that basis.

Finally, Tackett argues that the prison terms imposed on him for these crimes he committed before adoption of the sentencing guidelines should be converted to terms calculated under the guidelines for parole purposes. The legislature did permit conversion of sentences for some crimes under K.S.A. 21-4724(c)(1). But the statute expressly excluded other crimes—an exclusion covering Tackett. K.S.A. 21-4724(c)(1). The legislature has repealed K.S.A. 21-4724, so there is no longer any legal basis for converting preguidelines sentences.

Nonetheless, Tackett suggests he is entitled to conversion of his sentences under K.S.A. 2014 Supp. 22-3717(h)(2). But he misses the mark. In K.S.A. 2014 Supp. 22-3717(h)(2), the legislature outlined factors the Board should weigh in making parole decisions, including the "proportionality of the time the inmate has served to the sentence a person would receive under the Kansas sentencing guidelines for the conduct that

resulted in the inmate's incarceration." Tackett contends the language in K.S.A. 2014 Supp. 22-3717(h) requires his sentences be converted to guidelines punishments.

But the statute does not provide for conversion. It simply directs the Board to take account of the term of imprisonment the inmate would have received under the sentencing guidelines as one of a host of relevant factors in considering a request for parole. Moreover, Tackett presents no proportionality argument. The language of K.S.A. 2014 Supp. 22-3717(h) authorizes the Board to consider "the [inmate's] conduct" in assessing the sentence he or she would have received under the guidelines. We take that to mean the facts underlying the criminal activity—rather than the crimes of conviction—channel the assessment of the potential guidelines punishment. So the Board may look behind plea bargains that reduced the number or seriousness of the crimes of conviction to consider what crimes the factual circumstances actually supported. Tackett neither challenges that statutory method nor offers an explanation for why the time he has already served is disproportionately longer than a guidelines sentence based on his criminal conduct. Tackett has failed to outline any basis for relief in that respect.

Having reviewed Tackett's points on appeal, we find no error in the district court's ruling.

Affirmed.