968 F.2d 20
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Frederick MARTIN, Petitioner-Appellant,
v.
Raymond ROBERTS and Attorney General of the State of Kansas,
Robert T. Stephan, Respondents-Appellees.
 No. 91-3028.
 United States Court of Appeals, Tenth Circuit.
 June 1, 1992.
 
 Before HOLLOWAY, SEYMOUR and McWILLIAMS, Circuit Judges.
 ORDER AND JUDGMENT*
 McWILLIAMS, Senior Circuit Judge.
 
 
 1
 Frederick Martin, a state prisoner, filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Kansas alleging that his state convictions violated the Constitution of the United States. The district court dismissed the petition on its merits, and Martin appeals.
 
 
 2
 In the district court for Wyandotte County, Kansas, Martin was convicted of felony first degree murder, K.S.A. 21-3401; aggravated kidnapping, K.S.A. 21-3421; and unlawful possession of a firearm, K.S.A. 21-4204. Martin was sentenced to imprisonment for life on both the felony murder conviction and the aggravated kidnapping conviction, these sentences to somehow be served consecutively. He also received an additional sentence of three to ten years on the conviction for unlawful possession of a firearm, that sentence to be served concurrently with the two life sentences imposed. On direct appeal, Martin's convictions were affirmed by the Supreme Court of Kansas. State v. Martin, 740 P.2d 577 (Kan.1987). The background facts are fully set forth in State v. Martin, supra, and will not be unnecessarily repeated here.
 
 
 3
 In an unpublished opinion, the federal district court dismissed Martin's petition for habeas corpus on the merits. On appeal, counsel urges five grounds for reversal. They are: (1) the admission into evidence of Rosie Patrick's statement to the police violated Martin's Sixth Amendment right to confrontation; (2) Instruction No. 8 violated the Fourteenth Amendment requirement that a state prove every essential element of a criminal offense beyond a reasonable doubt; (3) the imposition of consecutive sentences for felony murder and aggravated kidnapping violates the Double Jeopardy clause of the Fifth Amendment; (4) permitting Martin to act as co-counsel, along with court-appointed counsel, in the trial of his case violated Martin's Sixth Amendment right "to have the Assistance of Counsel for his defense"; and (5) the fact that the Supreme Court of Kansas decided his direct appeal on written briefs, without oral argument, also violated Martin's Sixth Amendment right to assistance of counsel.
 
 I. Rosie Patrick
 
 4
 As will be developed later, Martin sought, and received, permission, to act as co-counsel with court-appointed counsel at the trial of his case. In this capacity, Martin conducted the cross-examination of one Kenneth Allen, a detective with the Kansas City, Kansas Police Department assigned to the homicide unit. In cross-examination of Detective Allen, Martin asked him whether in the course of his investigation he had interviewed one Rosie Patrick. Detective Allen answered that he had interviewed Rosie Patrick. Martin then asked Detective Allen if the statement given him by Rosie Patrick "coincided" with a statement given him by one Brenda Adams. Detective Allen then indicated that the two statements did "coincide," to which Martin opined, in the presence of the jury, that Brenda Adams' statement was "collaborated" (sic) by Rosie Patrick.[1] In his cross-examination of Detective Allen, Martin also established that after taking statements from Brenda Adams and Rosie Patrick on November 4, 1985, his investigation "centered on" Martin and Moore.[2]
 
 
 5
 On redirect examination of Detective Allen, the prosecutor, over objection, was allowed to read into the record the statement given Detective Allen by Rosie Patrick, the district court holding that Martin, by his cross-examination, had "opened the door" for such. Apparently, the district court was of the view that in Martin's cross-examination of Detective Allen he had established that Rosie Patrick had given a statement to Detective Allen and that her statement "coincided" with, and "corroborated," a statement made by Brenda Adams to Detective Allen, and presumably "coincided" with, and "corroborated," Brenda Adams' testimony at trial. Brenda Adams was called as a witness and testified prior to Detective Allen. Under such circumstances, the district court ruled that the prosecution, on redirect examination of Detective Allen, was entitled to inform the jury of the content of Rosie Patrick's statement, thereby allowing the jury to make its own determination of whether, in fact, and if so, to what degree, Rosie Patrick's statement coincided with that of Brenda Adams.
 
 
 6
 Specifically, Rosie Patrick's statement to Detective Allen read, in part, as follows:
 
 
 7
 Edward Adams was at my nextdoor neighbor's house or Edward Adams was my nextdoor neighbor. He had been missing for about three to four weeks before he was found. Edward and his wife Brenda had lived nextdoor for about four and one-half years; about four months ago Edward moved out. He and Brenda were in the process of divorcing. On 10/27/85, a week ago Sunday a friend of mine named James "Monk" Moore, a black male about thirty-two years old came by my house.... He asked me if I had heard the disturbance nextdoor and I told him I had. He said, well, that was me, and Black Jesus over there. Monk said that he and Black Jesus had kicked in the door and found Edward standing over Brenda, jumping on her. He said he went up and hit Edward in the side of the face with the pistol and told him to get off that woman. I said, you're kidding, and he said, we've already done the thing on him.[3]
 
 
 8
 In a statement to Detective Allen, Brenda Adams had stated that when her new boyfriend, Frederick Martin, was visiting her at her home in Kansas City, Missouri, on October 11, 1985, her estranged husband, Edward Adams, arrived on the scene where an argument quickly ensued, and that Edward Adams began beating her. She further stated that Frederick Martin then left and returned shortly with one James Moore, who was armed with a pistol. According to Brenda Adams, Martin and Moore then proceeded to tie Edward Adams' legs and arms with an unused telephone cord and that they then gagged him with a T-shirt. Frederick Martin then reportedly told Brenda Adams that they were not going to hurt Edward Adams, but were going to "scare him." Martin, Moore, and Edward Adams then left the scene by automobile, and Brenda Adams said she did not see Edward Adams alive after that time.[4]
 
 
 9
 Brenda Adams stated that Martin and Moore returned to her home that same evening and assured her that "nothing" had happened to Edward Adams and they were going to return his car. Still later that evening Frederick Martin returned and took Brenda Adams to the hospital for treatment of head wounds inflicted by her estranged husband, Edward Adams.[5]
 
 
 10
 At trial, Brenda Adams was of course a key prosecution witness, and her testimony paralleled her second statement to Detective Allen, which has been summarized above. As indicated, the prosecution in its direct examination of Detective Allen did not question him concerning any statements of Rosie Patrick, the district court having ruled in a pre-trial hearing that Rosie Patrick's statement to Detective Allen would not be admitted into evidence. The fact that Rosie Patrick had given Detective Allen a statement was first brought to the attention of the jury by Martin in his cross-examination of Detective Allen. By the form of his questions, Martin conveyed, or attempted to convey, to the jury the impression that Rosie Patrick's statement was the same as a statement given Detective Allen by Brenda Adams, and, a fortiori, the same as Brenda Adams' testimony at trial.
 
 
 11
 In our view, the determination of whether the admission into evidence of the contents of Rosie Patrick's statement to Detective Allen violated Martin's confrontation rights turns on whether Martin in his cross-examination of Detective Allen "opened the door" for such inquiry on redirect examination. If the door was so opened, then Martin effectively waived his confrontation rights.
 
 
 12
 Just what prompted Martin to cross-examine Detective Allen as he did is not clear to us. By such cross-examination, however, Martin established that Detective Allen did take a statement from Rosie Patrick, that her statement coincided with a statement given Detective Allen by Brenda Adams on that same day, and that after getting these two statements the police investigation of Edward Adams' homicide "centered on" Martin and Moore. Such, to us, constitutes a clear case of opening the door so as to permit the prosecution, on redirect examination of Detective Allen, to advise the jury of the content of Rosie Patrick's statement to Detective Allen. In this connection, the Kansas Supreme Court in State v. Martin, supra, spoke as follows:
 
 
 13
 The statement given by Rosie Patrick contained incriminating information regarding the appellant's involvement in Eddie Adams' murder. However, in light of appellant opening up the issue on cross-examination of Detective Allen, we hold it was proper for the State to introduce the Patrick statement. It has long been held that, on redirect examination, a witness may be asked questions to clarify or modify statements made on cross-examination, or to explain or rebut the effect of a new matter brought out on cross-examination, even though the witness did not testify concerning such matters on direct examination. State v. Beard, 220 Kan. 580, 552 P.2d 900 (1976). This issue is without merit.
 
 
 14
 State v. Martin, 740 P.2d 577, 583 (1987).
 
 II. Instruction No. 8
 
 15
 In line with K.S.A. 21-3104(2), the district court, over objection, instructed the jury by Instruction No. 8, inter alia, that "[i]f the body of a homicide victim is found within the state, the death is presumed to have occurred within the state." Martin claims that this instruction violates the Fourteenth Amendment requirement that a state must prove every element of a criminal offense beyond a reasonable doubt. See Sandstrom v. Martinez, 442 U.S. 510 (1979). Some detail is necessary to place this issue in focus.
 
 
 16
 The state's evidence clearly established, prima facie, that on October 11, 1985, Martin and Moore kidnapped Edward Adams in Brenda Adams' home in Kansas City, Missouri.[6] At that time, according to Brenda Adams, Martin and Moore tied Edward Adams' legs and hands with an unused telephone cord, gagged him with a T-shirt, and left the scene by automobile. As indicated, Edward Adams' body was found in a vacant, weed-covered lot in Kansas City, Kansas, on October 30, 1985, his legs and hands still tied by a telephone cord and a gag in his mouth. Adams was dead and the autopsy report showed that the cause of death was a gunshot wound in the chest and a second gunshot wound in the back of the neck. The doctor who performed the autopsy testified that the bullet in Edward Adams' chest went through the pulmonary artery and the aorta and that such an injury would normally result in massive internal bleeding. The doctor went on to testify that the fact that there was little or no external bleeding indicated to him that Edward Adams was not moved after the shooting.
 
 
 17
 In Cupp v. Naughten, 414 U.S. 141 (1973), the defendant, a state prisoner, in a § 2254 proceeding challenged his conviction on the ground that a presumption of truthfulness instruction placed the burden on him to prove his innocence, particularly due to the fact that he did not take the stand in his own defense. The Court of Appeals for the Ninth Circuit reversed the district court, holding that the instruction did not comport with due process. The Supreme Court granted certiorari and reversed, holding that an individual instruction could not be viewed in splendid isolation and should be viewed in the context of the overall charge. See id. at 146-47.
 
 
 18
 In Henderson v. Kibbe, 431 U.S. 145 (1977), the defendant, who was convicted of second degree murder, filed a petition for writ of habeas corpus challenging the district court's failure to instruct the jury on the issue of causation, thus constituting constitutional error. The Second Circuit Court of Appeals agreed and reversed the conviction. The Supreme Court reversed the Second Circuit and in upholding the conviction held in part that:
 
 
 19
 The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.' " Id. at 154, citing Cupp v. Naughten, 414 U.S. at 147.
 
 
 20
 When the instructions in the instant case are considered in their entirety, we believe the jury was properly advised that the prosecutor had the overriding burden of proving beyond a reasonable doubt all essential elements of the three crimes charged, including proof that the homicide and kidnapping occurred in Wyandot County, in Kansas. And, as indicated above, the only evidence in the case relating to where the homicide occurred came from the doctor performing the autopsy, who testified that the body had not been moved from the place where the fatal gunshots were fired, which was the vacant, weed-covered lot in Kansas City, Kansas.
 
 III. Double Jeopardy
 
 21
 As indicated, Martin was sentenced to life imprisonment on his conviction for felony murder and was also sentenced to life imprisonment on his conviction on the aggravated kidnapping charge, the two life sentences to be served consecutively.[7] In this appeal, counsel argues that the imposition of consecutive life sentences for felony murder and for aggravated kidnapping violates the Double Jeopardy Clause of the Fifth Amendment.
 
 
 22
 On his direct appeal to the Kansas Supreme Court, Martin's double jeopardy argument was a bit different. There he argued that because of the double jeopardy clause he could not be convicted of both felony murder and the underlying felony of aggravated kidnapping. In rejecting Martin's double jeopardy argument on the direct appeal of his convictions, the Kansas Supreme Court relied on State v. Crump, 654 P.2d 922 (Kan.1982), citing Syl. p 4 where that court held as follows:
 
 
 23
 The crime of first-degree murder resulting from the perpetration of a separate and distinct felony which is inherently dangerous to human life is a separate and distinct statutory crime from that constituting the underlying felony and a prosecution for both crimes does not violate the prohibition against double jeopardy as proscribed by the Fifth Amendment to the U.S. Constitution.
 
 
 24
 As indicated, in this court Martin does not argue that because of the Double Jeopardy Clause he cannot be convicted of both felony murder and the underlying felony, but rather that the Double Jeopardy Clause precludes the imposition of consecutive sentences for felony murder and the underlying felony. This is a distinction that we decline to make.
 
 
 25
 K.S.A. 21-3107 provides, in part, as follows:
 
 
 26
 21-3107. Multiple prosecutions for same act. (1) When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information or indictment....
 
 
 27
 In Jones v. Thomas, 491 U.S. 376 (1989), the Supreme Court was concerned with a Missouri state prisoner who was convicted and sentenced for felony murder and was also convicted and given a consecutive sentence for the underlying felony, which in his case was attempted robbery. In that case, the Supreme Court stated that the defendant's conviction of both felony murder and attempted robbery "gave rise to a double jeopardy claim only because the Missouri legislature did not intend to allow conviction and punishment for both felony murder and the underlying felony." Id. at 381. As indicated, in our case the Kansas legislature has by statute provided for "multiple prosecutions for the same act," and "multiple prosecutions" carries with it "multiple sentences," which in our view may be "consecutive sentences."[8]
 
 IV. Assistance of Counsel at Trial
 
 28
 Counsel in this appeal argues that the state district court violated Martin's Sixth Amendment right to the Assistance of Counsel by granting his request that he be allowed to participate in the trial of his case as co-counsel along with court-appointed counsel. So far as we can tell, this particular issue was never raised in the federal district court and was not mentioned in the district court's order denying Martin's petition. The general rule is that issues not raised in a district court will not be considered for the first time on appeal. United States v. Tisdale, 921 F.2d 1095, 1098 (10th Cir.1990), cert. denied, 112 S.Ct. 596 (Dec. 20, 1991).
 
 
 29
 In declining to consider in depth this particular assignment of error, we recognize that a defendant in a criminal proceeding has a Sixth Amendment right to the assistance of effective counsel, Strickland v. Washington, 466 U.S. 668 (1984), and also has the right to represent himself, Faretta v. California, 422 U.S. 806, 807 (1975). Martin, in a sense, availed himself of both of those rights, i.e., he had court-appointed counsel (not standby counsel) and also participated in the trial himself as so-called co-counsel. Martin, who apparently had some prior experience in criminal proceedings, asked that he be allowed to participate in his trial as co-counsel and the state district court granted that request, and then, on appeal, in a federal habeas corpus proceeding, Martin argues that in granting his request the state district court violated his Sixth Amendment rights. Such logic is difficult to follow, and the fact that Martin in his cross-examination of Detective Allen went "too far" and "opened the door" does not change the result.
 
 V. Assistance of Counsel on Appeal
 
 30
 Martin argues that he was denied his Sixth Amendment right to the Assistance of Counsel when the Kansas Supreme Court decided his appeal on the written briefs, without oral argument. His argument apparently is that the United States Constitution requires that his case be orally argued before the Kansas Supreme Court. We disagree.
 
 
 31
 In the state district court of Kansas, Martin, as indicated, participated as co-counsel with court-appointed counsel. On appeal to the Kansas Supreme Court, Martin was represented by the state's Chief Appellate Defender, who filed briefs on Martin's behalf. Thereafter Martin brought suit against his appellate counsel, which the latter thought was sufficient grounds for him to withdraw from the case. The Kansas Supreme Court thought so too, and permitted him to withdraw. Martin, incidentally, was allowed to file a pro se brief, though his request that he be allowed to orally argue his own case was denied. The state's attorney then moved to submit the appeal on the briefs, and the Kansas Supreme Court disposed of the case without oral argument. We find no violation of Martin's Sixth Amendment rights.
 
 
 32
 In this court, Martin was also permitted to file a pro se brief, which, in the main, was an attack on the partiality of the federal district judge who denied his habeas corpus petition. The record does not support such charges. Further, our resolution of the issues raised on appeal in this court has been on a de novo basis.
 
 
 33
 Judgment affirmed.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Brenda Adams did testify as a government witness at Martin's trial. Rosie Patrick was not called as a witness
 
 
 [2]
 Brenda Adams gave a statement to Detective Allen on November 1, 1985, in which she did not incriminate Martin, or anyone else. In a second statement to Detective Allen on November 4, 1985, she did implicate Martin and Moore
 
 
 [3]
 "Black Jesus" presumably was Frederick Martin
 
 
 [4]
 Edward Adams' body was found on October 30, 1985, in a vacant, weed-covered lot in Kansas City, Kansas, his legs and hands still tied with a telephone cord and with a gag in his mouth. An autopsy revealed that he had been shot once in the chest and once in the back of the neck
 
 
 [5]
 James Moore was charged along with Martin for the felony murder of Edward Adams. In a separate trial he was acquitted
 
 
 [6]
 Martin testified in his own behalf at his trial. His testimony was that he did not know where he was or exactly what he was doing on October 11, 1985, but that he had nothing to do with the kidnapping or murder of Edward Adams
 
 
 [7]
 In sentencing, the state district court deemed Martin to be a "habitual criminal" under Kansas statute, based on his two convictions for first degree robbery in Missouri
 
 
 [8]
 In Jones v. Thomas, supra, the Supreme Court stated that the Double Jeopardy Clause protects a criminal defendant against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against " 'multiple punishments for the same offense' imposed on a single proceeding." Id. at 381. In our case, we clearly have two offenses