**Danny CRUMP, Plaintiff,**

v.

**State of KANSAS, et al., Defendants.**

**No. CIV.A.97–3018–CM.**

United States District Court,
D. Kansas.

March 30, 2001.

Danny Crump, Lansing, KS, Pro se.

James W. Coder, Office of Attorney General, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This matter is before the court on the defendants' motion for summary judgment (Doc. 22). Because the court finds that (1) plaintiff has no liberty interest in parole pursuant to Kansas law, (2) the classifications applied by the state to the plaintiff are rationally related to a governmental interest and therefore do not constitute a violation of plaintiff's equal protection right pursuant to the Fourteenth Amendment, and (3) Kan. Stat. Ann. § 22–3717 (Supp.2000) does not violate the Ex Post Facto Clause of the United States Constitution, the court grants the defendants' motion.

### 1. Facts[1]

The plaintiff was convicted in 1981 in the Johnson County, Kansas, District Court of using a booby-trap dynamite bomb[2] in the first degree murder of his ex-wife and five members of her family, aggravated battery of three other persons, including plaintiff's son, and arson and attempted arson in destroying the house of his ex-wife's family and other property. Plaintiff was sen-

tenced to six concurrent terms of life imprisonment to be served consecutively[3] with three sentences of five to twenty years each for aggravated battery, a sentence of three to fifteen years for arson, and a sentence of one to five years for attempted arson.

Plaintiff went before the Kansas Parole Board (KPB) for consideration for parole in August 1995. The board denied parole and gave plaintiff a three year deferral before his next hearing for the following reasons: (1) serious nature and circumstances of the crime, (2) denies responsibility, (3) objections regarding parole, and (4) disciplinary reports.

The Kansas legislature amended Kan. Stat. Ann. § 22–3717 effective July 1, 1996 to allow the parole board to defer an inmate for parole hearing up to ten years if the "board finds that it is not reasonable to expect that parole would be granted at a hearing if held in the next 10 years or during the interim period of a deferral." Act of May 17, 1996, Ch. 267, § 15, 1996 Kan. Sess. Laws 1943, 1959 (codified as amended at Kan. Stat. Ann. § 22–3717 (Supp.2000)). In January 1997, plaintiff

---

1. The court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed.R.Civ.P. 56.

2. Plaintiff complains about the term "booby-trap dynamite bomb," and argues that "the explosion was a **point source explosion.**" (Pl.'s Objections and Answer at 1) (emphasis in original). However, the Kansas Supreme Court found that the state's case, upon which plaintiff was convicted, presented evidence that plaintiff used a booby-trap dynamite bomb. *State v. Crump*, 232 Kan. 265, 266, 654 P.2d 922, 925 (1982). The court recognized that the parties stipulated the cause of death was a point source explosion. *Id.* at 271, 654 P.2d at 928. Plaintiff, however, does not explain how a dynamite bomb is **not** a point source explosion.

3. Defendants state that **all** sentences are consecutive. However, the journal entry of judg-

ment in the district court does not support defendants' statement:

> the sentences imposed in Counts VII, VIII, IX, X and XI [for aggravated battery, arson and attempted arson] shall be served consecutively with each other and consecutively with the sentences imposed in Counts I, II, III, IV, V and VI [for murder].

(Defs.' Mem., Ex. 1, State v. Crump, No. K–38407, slip op. at 3 (June 11, 1981 Johnson County, Kan., Dist. Ct.)). The judgment does not state Counts I through VI are to be served consecutive to **each other** even though it states the sentences in Counts VII through XI are to be served consecutive to each other. Therefore, viewed in the light most favorable to plaintiff, it appears that the sentences for murder in Counts I through VI are to run concurrently with each other and consecutively with the other sentences.

filed this civil rights action pursuant to 42 U.S.C. § 1983 claiming that the procedures used at his parole hearing violated his due process rights under the United States Constitution.

In 1998, the plaintiff was again before the KPB, which denied him parole and deferred consideration until September 2008. The board stated its decision: "Pass to September 2008. Pass reasons: Serious and violent nature and circumstances of the crime, objections regarding parole.... [T]he board makes a special finding that a subsequent parole hearing should be deferred for 10 years, because it is not reasonable to expect that parole would be granted at a hearing if held before then, for the reasons indicated below: Extended pass reasons: Six counts of murder, 3 additional persons seriously injured, entire home destroyed." (Defs.' Mem., Ex. 2).

On September 29, 1999, plaintiff amended his complaint to add a claim that Kan. Stat. Ann. § 22–3717 as amended in 1996 violated the Ex Post Facto Clause, Art. I, § 10, of the United States Constitution. Defendants subsequently made the motion for summary judgment at issue here.

### 2. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; see *Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every ac-

tion." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### 3. § 1983 Due Process Claims

 To establish a claim under § 1983, a plaintiff must allege a deprivation under color of state law of a right protected by federal law or the Constitution. *Malek v. Haun*, 26 F.3d 1013, 1015 (10th Cir.1994). Plaintiff argues that, because the KPB received protest letters and victim impact statements in its consideration of plaintiff's parole, and because it used the amended statute to pass him for ten years before his next parole hearing, the KPB has violated plaintiff's due process rights under the United States Constitution. "The Due Process Clause applies when government action deprives a person of liberty or property." *Id.* (quoting *Greenholtz v. Neb. Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)). If plaintiff has a liberty interest in parole, it must come from some constitutional or statutory grant. *Id.*

 The Constitution does not itself provide an inherent right to receive parole before expiration of a valid sentence. *Id.* Plaintiff implies that he has a liberty interest in parole created by state law or parole regulations. State law or regulations create a liberty interest in parole only where they create a "legitimate expectation of release" or use "mandatory language which creates a liberty interest and places significant limits on the board's discretion." *Id.* at 1015–16 (quoting *Greenholtz*, 442 U.S. at 12, 99 S.Ct. 2100; and citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 377–80, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987)). Plaintiff cites to Greenholtz, in which the Court held that Nebraska statutes established a protected liberty interest in parole, Greenholtz, 442 U.S. at 12, 99 S.Ct. 2100, and an Eighth Circuit decision in which the court held that a regulation of the Arkansas Parole Board established a protected liberty interest in parole. *Parker v. Corrothers*, 750 F.2d 653, 661 (8th Cir.1984).

Greenholtz and Parker are readily distinguished from this case. In Greenholtz, the statute at issue required that the board "shall" order release "unless" it found one of four substantive reasons to deny parole. Greenholtz, 442 U.S. at 11–12, 99 S.Ct. 2100. The regulation at issue in Parker stated that it is the "policy of the Board to order ... release" "unless" the board finds one of nine substantive reasons to deny parole. *Parker*, 750 F.2d at 658. The Kansas statute at issue is worded in the opposite fashion from the statute or regulation in Greenholtz or Parker. The Kansas statute presumes that the inmate will **not** be released **unless** the parole board makes certain affirmative findings. The statute provides that "the Kansas parole board **may** release on parole those persons ... who are eligible for parole **when**: ... the board believes that" certain requirements are met. Kan. Stat. Ann. § 22–3717 (Supp.2000) (emphasis added). It is hard to conceive how the statute could be more discretionary short of granting the board unbridled discretion.

The statute in effect when plaintiff committed his crimes is of similar construction. "An inmate shall be placed on parole **only** when the Kansas adult authority believes that the inmate is able and willing to fulfill the obligations of a law-abiding citizen." Act of Apr. 16, 1979, Ch. 94, § 2, 1979 Kan. Sess. Laws 534, 538 (codified as amended at Kan. Stat. Ann. § 22–3717 (Supp.2000)) (emphasis added). Neither statute contains mandatory language which places significant limitations on the board's discretion and neither creates a legitimate expectation of release.

Plaintiff does not point to any regulation of the parole board which might create a protected liberty interest in parole. The

court has made an independent review of the Kansas Parole Board regulations, Kan. Admin. Reg. § 45–1–1 et seq., and finds no basis to conclude that the regulations create such an interest. The court finds that neither the Kansas parole statute nor the regulations create a protected liberty interest in parole.

The court's conclusion is supported by Kansas law. In 1988, the Kansas Supreme Court reviewed § 22–3717 and several Supreme Court decisions regarding creation of a protected liberty interest-including Greenholtz and Allen. *Gilmore v. Kan. Parole Bd.*, 243 Kan. 173, 756 P.2d 410 (1988). The court determined that the statute (containing language different than in either 1979 or 1996) does not create a protected liberty interest in parole. *Id.* at 179, 756 P.2d at 414. The court concluded that the factors which the board is to consider before granting parole are not limitations on the board's discretion but procedural guidelines for the board's consideration. *Id.* at 180, 756 P.2d at 414. That court noted that the board's actions in **revoking** parole involve a liberty interest but when the matter before the board is the **granting** or **denial** of parole, a liberty interest does not arise. *Id.* at 180, 756 P.2d at 415. The court held that parole in Kansas is a matter of grace, granted as a privilege and not as a fundamental right and that the Kansas parole statute does not create a liberty interest in parole. *Id.*

Because the plaintiff has no liberty interest in parole, the failure to grant him parole, or the decision to defer for ten years before reconsideration, does not deprive the plaintiff of a liberty interest. Consequently, the Due Process Clause does not apply to the facts alleged by plaintiff. Therefore, as a matter of law, the court finds that plaintiff cannot establish a § 1983 violation based upon the Due Process Clause.

### 4. § 1983 Equal Protection Claims

Although plaintiff's pleadings are by no means clear, the court construes the pleadings to include a § 1983 claim that defendants, under color of state law, have violated plaintiff's Fourteenth Amendment right to equal protection of the laws. Plaintiff argues that only certain parole hearings such as his generate media and public attention and the resulting public comments and victim impact statements. He further complains that media reports showed the Chair of the KPB holding the hand of family members of the victim in a public hearing concerning his case, and that the ten-year deferral provision of § 22–3717 applies only to inmates convicted of Class A, Class B, or off-grid felonies. Therefore, plaintiff argues that persons whose parole hearings generate public or media attention and persons convicted of Class A, Class B, or off-grid felonies constitute classes of persons who are discriminated against by the state, and thus denied equal protection of the laws.

### 5. Legal Standard

"The analysis of an equal protection claim must begin with a determination of whether the challenged classification is one which involves a suspect class or the exercise of a fundamental right." *Copeland v. Matthews*, 768 F.Supp. 779, 780 (D.Kan.1991) (citing *Plyler v. Doe*, 457 U.S. 202, 216–17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). As the court determined above, plaintiff has no fundamental right to parole before the expiration of his sentence. Furthermore, inmates are not a suspect class for equal protection purposes. *Id.* (citing *Ruark v. Solano*, 928 F.2d 947, 949 (10th Cir.1991)). Moreover, the plaintiff does not cite to any authority, nor is the court aware of any basis to find, that the classes described above are suspect. Therefore, because this case impli-

cates neither a suspect class nor a fundamental right, the court will apply a rational basis test to determine whether the classifications at issue serve a valid governmental interest and are rationally related to that interest. *Id.* at 781 (citing *McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973)).

### 6. Classification for Notice

■ Section 22–3717 includes a provision requiring notification of the victim's family at least one month before the public comment session relating to an inmate's parole hearing. For an inmate convicted of a Class A felony, if the notification is not given, a decision on parole shall be postponed until at least 30 days after notification is given. § 22–3717(h). The statute provides that at each parole hearing the KPB shall consider numerous factors including the inmate's previous social history, comments of the victim and the victim's family, and comments of the public. *Id.* Furthermore, the KPB must determine whether, in its opinion, "there is reasonable probability that the inmate can be released without detriment to the community or the inmate." § 22–3717(g). The court acknowledges that the notification procedure will generate public attention, particularly with regard to inmates convicted of multiple murders as in this case. Nonetheless, the court finds that the procedure is rationally related to the state's interests to ensure that inmates are appropriately punished commensurate with the circumstances and impact of their crime, and to determine whether the inmate may be released without detriment to the community or the inmate.

■ With regard to plaintiff's allegations that the Chair of the KPB was holding hands with the victim's family, plaintiff does not produce any evidence which would support an inference that the Chair was biased, or unduly influenced by her contacts with the victim's family at a public comment session, or that the contacts were unlawful. In short, plaintiff has not shown that the conduct of the Chair in any way affected his right to equal protection under the laws.

### 7. Classification for Deferral

■ Finally, plaintiff argues that inmates convicted of Class A, Class B, or off-grid felonies are denied equal protection of the laws because they are subject to deferral up to ten years. Plaintiff does not deny that inmates convicted of Class A, Class B, or off-grid felonies are given parole less frequently after serving longer periods in custody than inmates convicted of lesser offenses. Plaintiff has not shown or alleged that **all** inmates convicted of Class A, Class B, or off-grid felonies are deferred for ten years **every** time the board considers them. The state has established a procedure for parole review whereby the board is not required to expend time and resources considering inmates for parole who are not likely to receive parole for a considerable time. The court finds that the classification is rationally related to the state's interests to conserve resources, expend resources only on those cases more likely to warrant parole in the near term, and to defer hearings up to ten years for those cases unlikely to warrant parole in the interim.

Because the court has found that the classifications are rationally related to a governmental interest, there has been no equal protection violation on the facts alleged by plaintiff. Therefore, as a matter of law, the court finds that plaintiff cannot establish a § 1983 violation based on the alleged equal protection violation.

### 8. Ex Post Facto Clause Claim

■ The Constitution, in Article I, § 10, prohibits states from passing any ex

post facto law. The clause prohibits passage of laws which "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)). Therefore, the question before the court is whether the 1996 amendment to Kan. Stat. Ann. § 22–3717 increases the "punishment" for plaintiff's crimes. The Morales Court stated the task of the court is to "determine whether [the amendment] produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." Morales, 514 U.S. at 509, 115 S.Ct. 1597. A more recent Supreme Court decision held that the plaintiff has the burden to "show that as applied to his own sentence the law created a significant risk of increasing his punishment." *Garner v. Jones*, 529 U.S. 244, 255, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000).

### 9. Controlling Precedent

Morales involved an amendment to the California statutes which allowed the parole board to defer a parole hearing for up to three years for an inmate "convicted of 'more than one offense which involves the taking of a life' and if the Board 'finds that it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding.'" *Morales*, 514 U.S. at 503, 115 S.Ct. 1597 (quoting Cal.Penal Code Ann. § 3041.5(b)(2) (West 1982)). Morales committed his second murder before the amendment. Prior to the amendment, the statute provided for annual review. *Id.* Morales argued that the amendment constituted an ex post facto law as applied to him. *Id.* at 504, 115 S.Ct. 1597. After considering the circumstances of Morales's case, the Court determined that the amendment "creates only the most specu-

lative and attenuated risk of increasing the measure of punishment attached to the covered crimes" and did not constitute a violation of the ex post facto clause. *Id.* at 514, 115 S.Ct. 1597.

The Court noted that the amendment did not affect the timing of an initial parole hearing, but only of subsequent hearings and only if the board found, after a full hearing, that it was not reasonable to expect that parole would be granted in the intervening years and stated the bases for its finding. The Court stated that there may be a possibility of administrative appeal under California law. The board retained authority to establish a deferral period between one and three years depending on the case. *Id.* at 511, 115 S.Ct. 1597. Further, the Court found, it is likely that an inmate who experiences a drastic change of circumstances could receive an expedited review through petitioning the board. Moreover, release usually follows a parole decision by several years in any case, and the board retained authority to expedite the release date, if necessary. *Id.* at 512–13, 115 S.Ct. 1597.

Last year the Supreme Court reviewed an amendment of a Georgia regulation allowing the board to defer review for inmates convicted of multiple offenses from three years to as long as eight years. Jones, 529 U.S. at 247–48, 120 S.Ct. 1362. In Jones, the district court found Morales controlling and granted the parole board's motion for summary judgment. *Id.* at 248, 120 S.Ct. 1362. The appellate court distinguished Morales in that (1) the Georgia regulation applies to a much broader class of inmates, (2) the deferral time of up to eight years is much longer than the three years allowed by the California statute in Morales, and (3) although the regulation allows the board discretion to establish individual times, it does not require the board "to make particularized findings"

and is not "carefully tailored." *Id.* at 248–49, 120 S.Ct. 1362 (quoting Jones v. Garner, 164 F.3d 589, 594–95 (11th Cir.1999)). The Supreme Court reversed. *Id.* at 249, 120 S.Ct. 1362.

The Court held that the burden was on Jones, the respondent, to show that the regulation as applied to his sentence created a significant risk of increasing his punishment. *Id.* at 255, 120 S.Ct. 1362. The Court found that the appellate court had erroneously failed to consider the board's statement that an inmate may request expedited consideration in the event of a change in circumstances. In dicta, the court stated:

> Given respondent's criminal history, including his escape from prison and the commission of a second murder, it is difficult to see how the Board increased the risk of his serving a longer time when it decided that its parole review should be exercised after an 8–year, not a 3–year, interval. Yet if such a risk develops, respondent may, upon a showing of either 'a change in [his] circumstance[s]' or the Board's receipt of 'new information,' seek an earlier review before the 8–year interval runs its course.

*Id.* Because of the board's policy for expedited consideration, and because Jones argued he had not been provided sufficient discovery to produce any evidence to the contrary, the Court reversed and remanded for further proceedings. *Id.* at 257, 120 S.Ct. 1362.

The Tenth Circuit Court of Appeals has decided a similar case. *Raymer v. Enright*, 113 F.3d 172 (10th Cir.1997). In Raymer, a Colorado statute had been amended to provide that parole review could be deferred up to three years for certain classes of inmates, including those convicted of class 1 or class 2 crimes of violence. *Id.* at 173. Raymer had been convicted of two counts of first degree murder and sentenced to two concurrent terms of ten years to life. Before the amendment to the statute, Raymer had been considered for parole every year from 1987 to 1995. *Id.* In 1995, the board denied parole, and set the next review for three years later. On the notice form, the board checked the reasons for deferral: "AGGRAVATING FACTORS/INADEQUATE TIME SERVED (*Circumstances of* Offenses *Needs more time*)." Raymer sued alleging that application of the statute constituted a violation of the Ex Post Facto Clause. *Id.* at 174.

Although the Colorado statute applied to a broader class of inmates than the statute in Morales, the court considered the statute only as it applied to Raymer-an inmate with two murder convictions. The Tenth Circuit declined to decide whether the statute constituted an ex post facto violation when applied to inmates convicted of lesser crimes. The court did not view the fact that Raymer had received a six-month review extension in 1991 in order to seek a community corrections placement as an indication that he was getting close to parole approval. Raymer had not obtained the placement, and the board had not indicated that he would be paroled if he received the placement. The court noted that mere setting of the review date three years later might be considered an implicit finding that release is not expected, even though the statute did not **require** such a finding. The court also found that the inmate was given an administrative appeal and that Colorado law provided for expedited hearings if warranted. *Id.* at 175–76. The court found that there was no ex post facto violation because Raymer "failed to show a sufficient risk that his effective punishment is more onerous under the new Colorado statute," and affirmed the dismissal of Raymer's complaint. *Id.* at 176.

## 10. Application

▪ In this case, the court finds that plaintiff has failed to show a sufficient risk

that his effective punishment will be increased under the Kansas statute. Plaintiff was convicted of six counts of first degree murders, three counts of aggravated battery, one count of arson and one count of attempted arson. The circumstances of the physical devastation caused to the victims and the victim's families are horrendous in this case. See *State v. Crump*, 232 Kan. 265, 270–271, 654 P.2d 922, 928 (1982) (describing photographs taken after the explosion). As plaintiff notes, this case generates public attention each time it comes up for hearing. There is no reason to believe that interest will wane between hearings. In view of these circumstances, it is hard to imagine how a change in parole consideration from three years to ten years has increased the risk that this plaintiff's punishment will be increased.

Although, as plaintiff argues, the Kansas statute sweeps more broadly than the statute at issue in Morales, that fact is not determinative because the court must consider the statute as applied to the plaintiff. Each inmate in Morales, Jones, and Raymer had been convicted of two murders. Plaintiff here has been convicted of six murders. The fact that the statute applies to inmates convicted of lesser crimes does not alter the fact that plaintiff's crimes are at least as egregious as those in Morales, Jones, and Raymer and might justify a longer deferral between hearings.

As in Morales and Jones, the court finds that administrative efficiency would be served in this case by deferring reviews for inmates where it is not reasonable to expect that parole would be granted in the intervening period. Plaintiff may request that his parole hearing be advanced if circumstances change significantly during the deferral period. Unlike Morales, where the Court found a mere possibility that the hearing could be advanced, Kansas parole regulations provide for an advanced hearing. *Swisher v. Hamilton*, 12 Kan.App.2d 183, 186, 740 P.2d 95, 97 (1987); see Kan. Admin. Reg. § 45–6–1(e) (effective May 1, 1980) (now codified at Kan. Admin. Reg. § 45–6–2 (2000) (effective May 1, 1982, amended May 1, 1986)). Furthermore, the regulations provide that an inmate may appeal or request reconsideration of the board's decision. Kan. Admin. Reg. § 45–4–6 (2000) (effective May 1, 1980 (appeal right), amended May 1, 1986 (reconsideration language added)).

Similar to the statute and regulation at issue in Morales and Jones, the statute here requires that the board make a finding "that it is not reasonable to expect that parole would be granted at a hearing if held in the next 10 years or during the interim period of a deferral." § 22–3717 (as amended in 1996). The parole board in plaintiff's case stated: "[T]he board makes a special finding that a subsequent parole hearing should be deferred for 10 years, because it is not reasonable to expect that parole would be granted at a hearing if held before then, for the reasons indicated below: Extended pass reasons: Six counts of murder, 3 additional persons seriously injured, entire home destroyed." (Defs.' Mem., Ex. 2). As in Morales, the parole board made particular findings and gave written reasons for its decision.

The only factor present here that was not present in Morales or Raymer is that this statute allows deferral for a period of up to ten years while those statutes allowed deferral only for a maximum of three years. In Jones the maximum deferral period is eight years. Although the Jones Court did not decide whether eight years was permissible on the facts of that case, in dicta the Court indicated that based upon Jones's criminal history it is difficult to see how an eight-year deferral increased the risk of his serving a longer

time. *Jones*, 529 U.S. at 255, 120 S.Ct. 1362.

Perhaps a ten-year deferral would present a sufficient risk of greater punishment in some circumstances, applied to some inmates convicted of Class A, Class B, or off-grid felonies. That is not the case before this court. Here, the parole board exercised its discretion after a full hearing, found that it was not reasonable to expect parole would be granted to plaintiff in the next ten years and stated its reasons for that belief. The plaintiff has been convicted of crimes that are particularly heinous and involve numerous victims, including six counts of murder. Plaintiff may request an expedited review in the event circumstances change significantly during the deferral period. The court finds that in the circumstances of this case, plaintiff has not shown that application of the 1996 amendment of § 22–3717 to the plaintiff presents a sufficient risk of greater punishment for his crimes. Therefore, application of § 22–3717 to the plaintiff does not constitute a violation of the Ex Post Facto Clause of the United States Constitution.

### 11. Conclusion

Plaintiff has no liberty interest in parole, and therefore the court finds plaintiff cannot establish a § 1983 claim based upon violation of the Due Process Clause of the United States Constitution. Plaintiff cannot sustain his § 1983 claim based upon a violation of his right to equal protection of the laws. Plaintiff has not shown a suspect classification or violation of a fundamental right. The court finds that the classifications applied by the state to the plaintiff are rationally related to a governmental interest and therefore do not constitute a violation of plaintiff's equal protection right under the Fourteenth Amendment. Finally, plaintiff has not shown that the amendment to § 22–3717 presents a sufficient risk of greater pun-

ishment for his crimes. Therefore, the court finds that application of the section does not constitute a violation of the Ex Post Facto Clause of the United States Constitution. Plaintiff, as a matter of law, failed to establish the claims made in his complaint. Therefore, defendants' motion for summary judgment shall be granted and plaintiff's complaint shall be dismissed with prejudice.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (Doc. 22) is granted and plaintiff's complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike (Doc. 18) is denied as moot.