Lance L. **FURNARI**, Plaintiff–Appellant,

v.

Aristedes **ZAVARAS**, Executive Director, Colorado Department of Corrections and Larry Trujillo, Chairman and Hearing Officer for the Colorado Parole Board, Defendants–Appellees.

No. 95CA0568.

Colorado Court of Appeals,
Div. IV.

Feb. 1, 1996.

Bob Mullan, Denver, for Plaintiff–Appellant.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Paul S. Sanzo, First Assistant Attorney General, Denver, for Defendants–Appellees.

Opinion by Judge KAPELKE.

In this C.R.C.P. 106(a)(2) action, plaintiff, Lance L. Furnari, an inmate in the custody of the Colorado Department of Corrections (Department), appeals from the district court judgment dismissing his complaint against defendants, Aristedes Zavaras, as executive director of the Department, and Larry Trujillo, as chairman and hearing officer for the Colorado Parole Board (Board). We affirm.

In this action, plaintiff sought to compel the Board to reconsider his application for parole on an annual rather than a triennial basis. On defendants' motion, the district court dismissed the action.

The key issue on appeal is whether the Board's retroactive application to plaintiff of the amended statutory provisions increasing the interval between the mandatory reconsideration of parole applications for certain inmates from one to three years violated the federal and state constitutional prohibi-.

tions against *ex post facto* laws. We conclude that it did not, and that the district court therefore properly dismissed the action.

The relevant facts are not in dispute. Plaintiff was convicted of second degree murder for a homicide he committed in May 1987, and, for that class 2 felony and crime of violence, he is serving a 16–year sentence.

The Board denied plaintiff's initial application for parole in October 1993 and set the matter for reconsideration one year later. In October 1994, the Board again denied plaintiff's application for parole, but set the matter for reconsideration in October 1997.

Under the statutory scheme in effect in May 1987, at the time plaintiff committed the offense for which he was convicted, if the Board denied an inmate's application for parole, it was required to "reconsider within one year thereafter" and to "continue the reconsideration each year thereafter" until the inmate either was granted parole or was discharged. Section 17–22.5–303(6), C.R.S. (1986 Repl.Vol. 8A); *see also* § 17–2–201(4)(a), C.R.S. (1986 Repl.Vol. 8A) (similar statutory provisions applicable to other inmates eligible for parole under other provisions).

However, in June 1994, the General Assembly amended these statutory provisions. The effect of the amendments was to increase the interval between a denial of parole and the Board's mandatory reconsideration from one to three years with respect to a limited group of inmates, including plaintiff, who were convicted of certain types of major felony offenses.

Specifically, the 1994 amendments added the following provisions to the pertinent statutory scheme:

[I]f the person applying for parole was convicted of a class 1 or class 2 crime of violence ... [then] the board need only reconsider granting parole to such person once every three years, until the board grants such person parole or until such person is discharged pursuant to law.

Section 17–22.5–303(6), C.R.S. (1995 Cum. Supp.); *see also* §§ 17–2–201(4)(a), 17–22.5–403(5), & 17–22.5–403(7), C.R.S. (1995 Cum.

Supp.) (other statutory provisions similarly amended in 1994 applicable to other inmates eligible for parole under other provisions).

Thus, in setting plaintiff's application for parole for reconsideration on a triennial basis, the Board retroactively applied the provisions of the 1994 amendments to § 17–22.5–303(6).

Plaintiff contends that the Board's retroactive application of the amended provisions violates the federal and state constitutional proscriptions against *ex post facto* laws. We disagree.

We find *California Department of Corrections v. Morales*, 514 U.S. ——, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) to be determinative. In *Morales*, the United States Supreme Court rejected an inmate's similar challenge to the retroactive application of a statutory amendment in California that authorized the deferral of parole suitability hearings as to certain inmates from one year to up to three years under certain circumstances.

■ Under *Morales*, the operative test for purposes of *ex post facto* analysis is whether the application of the subsequent legislation modifying parole procedures retroactively "increases the punishment" for the offense beyond that in effect when it was committed. *Morales, supra*, 514 U.S. at ——, 115 S.Ct. at 1601–02, 131 L.Ed.2d at 594–96.

■ Moreover, the question whether particular legislation poses a "sufficient risk" of increasing the measure of punishment so as to violate the constitutional prohibition is a matter of "degree." Consequently, legislation which creates only a "speculative and attenuated" risk of producing the prohibited effect of increasing the measure of punishment for covered crimes does not violate the constitutional standard. *Morales, supra*, 514 U.S. at ——, 115 S.Ct. at 1602–03, 131 L.Ed.2d at 596–97.

Contrary to plaintiff's argument, we are not persuaded that the holding in *Morales* is distinguishable because of differences between the amended California statute upheld in that case and the amended Colorado statute at issue here.

Plaintiff points out certain differences between the two statutory schemes. For example, the California statute applied to a narrower group of prisoners, *i.e.*, those who had been convicted of more than one offense involving the taking of a life. Also, unlike the current Colorado statute, the California statute authorized the deferral of subsequent parole hearings for up to three years only upon an express finding that it was not reasonable to expect that parole would be granted at any hearing during the intervening years. *See Morales, supra; see also* § 17–22.5–303(6), C.R.S. (1995 Cum.Supp.).

However, we perceive no constitutionally significant differences between the amended California statute upheld in *Morales* and the statute involved in this case, and we conclude that there is no *ex post facto* violation under the circumstances here.

As was the case in *Morales*, the 1994 amendments to § 17–22.5–303(6) did not change the applicable sentencing scheme itself or the substantive criteria for determining plaintiff's eligibility and suitability for parole. Thus, rather than retroactively increasing the "quantum of punishment" for plaintiff's offense, the 1994 amendments to the parole procedures in § 17–22.5–303(6) merely "altered the method to be followed" in determining whether to grant parole under identical substantive standards. *See Morales, supra*, 514 U.S. at ——, 115 S.Ct. at 1601–02, 131 L.Ed.2d at 594–96.

We conclude that, like the legislation in *Morales*, the 1994 amendments to § 17–22.5–303(6) create only a "speculative and attenuated" risk of producing the prohibited effect of increasing the actual punishment for the covered crimes. These speculative effects are insufficient to establish a violation of the *ex post facto* prohibition. *See Morales, supra.*

The 1994 amendments to § 17–22.5–303(6), like the California amendments, apply only to a limited group of inmates for whom the likelihood of release on parole appears to be remote in light of the significant gravity of their offenses. Also, the 1994 amendments similarly have no effect on the timing of the Board's consideration of any inmate's *initial* application for parole, but only authorize a

longer period of deferral of the Board's mandatory *reconsideration* of such parole applications.

Finally, as was the case under the California legislation, the Board retains the authority under these amendments to reconsider granting parole to such inmates on a more frequent basis, in its discretion, as particular circumstances involving individual inmates may warrant. *See* §§ 17–22.5–303(6) & 17–22.5–404(1), C.R.S. (1995 Cum.Supp.); Department of Corrections Regulation 5.5, 8 Code Colo. Reg. 1503–1 (1992).

Thus, applying the constitutional standards in *Morales*, we conclude that the Board did not violate the federal and state constitutional prohibitions against *ex post facto* laws by deferring reconsideration of plaintiff's parole application until 1997. *See Morales, supra; see also Gasper v. Gunter*, 851 P.2d 912 (Colo.1993) (application of statutory bar to crediting time spent on parole if parole is later revoked did not violate federal and state *ex post facto* prohibitions because no additional punishment imposed beyond original sentence); *Goetz v. Gunter*, 830 P.2d 1154 (Colo.App.1992) (statutory provisions tolling expiration of parole upon filing of a violation complaint did not violate federal and state *ex post facto* prohibitions because no additional punishment imposed).

Because the Board acted within the scope of its discretion under its constitutional and statutory authority here, the district court properly dismissed plaintiff's action under C.R.C.P. 106(a)(2). *See White v. People*, 866 P.2d 1371 (Colo.1994); *In re Question Concerning State Judicial Review of Parole Denial*, 199 Colo. 463, 610 P.2d 1340 (1980).

Accordingly, the judgment of dismissal is affirmed.

NEY and TAUBMAN, JJ., concur.