**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 6 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SCOTT ELLIOTT RAYMER,

      Plaintiff-Appellant,

    v.

JOHN RAY ENRIGHT and ROBERT
PASTORE, of the Colorado State Board
of Parole,

      Defendants-Appellees.

No. 96-1183

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 95-S-3088)

---

David J. Richman of Burns, Figa & Will, Englewood, Colorado, for Plaintiff-Appellant.

Paul S. Sanzo, First Assistant Attorney General, Civil Litigation Section (Gale A. Norton, Attorney General, with him on the briefs), Denver, Colorado, for Defendants-Appellees.

---

Before BRORBY, LOGAN and HENRY, Circuit Judges.

---

LOGAN, Circuit Judge.

---

Plaintiff Scott Elliott Raymer appeals from the district court's dismissal of his 42 U.S.C. § 1983 complaint. The issue before us is whether 1994 amendments to the Colorado parole statutes that decreased the frequency of parole suitability hearings for certain classes of prisoners violated the Ex Post Facto Clause of the United States Constitution. As applied to plaintiff, we hold they do not, and hence we affirm the dismissal.

Plaintiff was convicted in 1976 on two counts of first degree murder and sentenced to two concurrent indeterminate prison terms of ten years to life. At that time Colorado law provided that the parole board (Board) would consider him for parole after he served ten years of his sentence, and yearly thereafter. See Colo. Rev. Stat. §§ 17-22.5-104(2)(a) & 17-2-201(4)(a) (1986). Plaintiff first became eligible for parole in 1987. The Board denied his request then and every year from 1988 through 1994. The only indication that the Board might consider paroling plaintiff was in 1991, when in February the Board deferred plaintiff's parole hearing for six months to allow him to pursue a community corrections referral; when plaintiff did not obtain the referral the Board again denied him parole in November of that year.

In 1994, the Colorado legislature amended the parole consideration statute and added the emphasized language:

> If the board refuses an application for parole, the board shall recon-
> sider the granting of parole to such person within one year thereafter, or
> earlier if the board so chooses, and shall continue to reconsider the granting
> of parole each year thereafter until such person is granted parole or until

such person is discharged pursuant to law; <u>except that, if the person apply-ing for parole was convicted of a class 1 or class 2 crime of violence, as defined in section 16-11-309, C.R.S., any class 3 sexual offense described in part 4 of article 3 of title 18, C.R.S., a habitual criminal offense as defined in section 16-13-101(2.5), C.R.S., or any offense subject to the requirements of section 16-13-203, C.R.S., the board need only reconsider granting parole to such person once every three years, until the board grants such person parole or until such person is discharged pursuant to law.</u>

Colo. Rev. Stat. § 17-2-201(4)(a) (1996 Cum. Supp). In November 1994, after the new statute took effect, the Board considered plaintiff's application, denied him parole, and set his next review for one year. In 1995, however, the Board refused plaintiff parole, and applied the 1994 amendment to defer his hearing for three years, checking as the reasons for deferral on the notice form: "AGGRAVATING FACTORS/INADEQUATE TIME SERVED (<u>Circumstances of</u> Offenses <u>Needs more time</u>)." I R. doc. 5 at 8.

Plaintiff then filed this civil rights action alleging that the retroactive application of the 1994 amendments was ex post facto as applied to him. When the district court dismissed plaintiff's complaint he filed the instant appeal.[1]

---

[1] The district court dismissed the action as frivolous under 28 U.S.C. § 1915(d). It did so, however, only after receiving a <u>Martinez</u> report, considering plaintiff's response, and reviewing an opinion of the Colorado Court of Appeals in a different case which upheld the constitutionality of the statute, <u>Furnari v. Zavaras</u>, 914 P.2d 508 (Colo. App. 1996). The district court also wrote a seven-page Order of Dismissal analyzing the law as applied to plaintiff's situation. On appeal, we appointed counsel under our plan for appointment of counsel in special civil appeals and, after briefing, allowed oral argument. Thus, although we affirm the district court's denial of relief we do not consider this case to be frivolous within the contemplation of 28 U.S.C. § 1915(d). Because we looked outside the pleadings we are treating this as a dismissal under Fed. R. Civ. P. 56 and not as a dismissal under 28 U.S.C. § 1915(e)(2)(B).

An ex post facto law is "any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981) (quotations omitted). There is no mechanical formula for determining whether a new law sufficiently increases punishment to be considered ex post facto; rather, courts must determine on a case by case basis whether a change in law "produces a sufficient risk" of greater punishment for covered crimes. California Dep't of Corrections v. Morales, 115 S. Ct. 1597, 1603 (1995). This is not a case in which plaintiff can establish "that no set of circumstances exists under which the [amendment] would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). Thus, we must analyze the case "as applied" to plaintiff, based upon the circumstances of his case--not as a facial challenge. See Artway v. Attorney General, 81 F.3d 1235, 1252 n.13 (3d Cir. 1996).

In Morales, the Supreme Court addressed a claim similar to the one before us: whether a change in a California statute allowing the Board of Prison Terms (BPT) to decrease the frequency of parole "suitability" hearings violated the Ex Post Facto Clause as applied to the petitioner who was convicted before the amendment. The amendment allowed the BPT to defer its annual suitability hearing (after the initial hearing) to up to three years for prisoners convicted of "more than one offense which involves the taking of a life" if the BPT "finds that it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding." 115 S. Ct. at

- 4 -

1600 (citing Cal. Penal Code Ann. § 3041.5(b)(2) (West 1982)). The BPT held an initial hearing in 1989, and found Morales "unsuitable for parole for numerous reasons, including the heinous, atrocious, and cruel nature of his offense; the mutilation of [the elderly victim] during or after the murder; respondent's record of violence and assaultive behavior; and respondent's commission of his second murder while on parole for his first." 115 S. Ct. at 1600. The BPT then concluded that it needed a longer period of observation before a parole release date could be projected. Because the BPT did not reasonably expect respondent would be found suitable for parole in 1990 or 1991, it scheduled the next hearing for 1992.

The Supreme Court in Morales concluded that the California statute did not have the purpose and effect of enhancing the range of available prison terms. Rather, the amendment merely "alter[ed] the method to be followed" in fixing a parole release date under "identical substantive standards." 115 S. Ct. at 1602. The Court rejected the argument that the Ex Post Facto Clause prohibits any change in the law that has "any conceivable risk of affecting a prisoner's punishment." 115 S. Ct. at 1602 (citing, among others, changes in membership of BPT and restrictions on law library hours as obstacles that might create some risk of affecting a prisoner's opportunity to make a case for early release, but which are not ex post facto violations). The Court concluded that the California amendment created only a speculative and attenuated possibility of increasing

the measure of punishment for the covered crimes, and that such a risk was not enough to establish an ex post facto violation.

Defendants rely on Morales to support the constitutionality of the Colorado amendment, as did the district court. Plaintiff attempts to distinguish Morales, based on several differences in the laws commented upon by the Supreme Court in support of its conclusion. The Morales opinion stated that "the [California] amendment applies only to a class of prisoners [convicted of more than one offense involving the taking of a life] for whom the likelihood of release on parole is quite remote."[2] 115 S. Ct. at 1603. In contrast, the Colorado amendment applies to a much broader class of prisoners, including those convicted of crimes of violence, sexual offenses, and habitual criminal offenses, see Colo. Rev. Stat. § 17-2-201(4)(a) (1996 Cum. Supp.), who are more likely to be released than the class in Morales. But plaintiff himself has two murder convictions, like the petitioner in Morales, and we must consider the Colorado amendment as applied to plaintiff's situation. The only hope of parole plaintiff can point to is his receipt of a six-month review extension in 1991 to pursue a community corrections placement. He did not obtain such a placement, and even if he had, the Board did not indicate he would then

---

[2] The Morales Court noted that in California, about 85 percent of prisoners are found unsuitable for parole at second and subsequent hearings, and concluded that the amendment was a means to relieve the BPT of "the costly and time-consuming responsibility of scheduling parole hearings for prisoners who have no chance of being released." 115 S. Ct. at 1604.

be suitable for parole. The Board's denial of parole on twelve separate occasions, including four after 1991, strongly suggests plaintiff was not likely to receive parole.

Plaintiff relies on the Morales opinion's statement that "the [BPT's] authority under the [California] amendment is carefully tailored" to delay hearings only for those petitioners with no chance of being released. 115 S. Ct. at 1604. The California statute required that the BPT state its findings, after a hearing, that the prisoner is unsuitable for parole and that "it is not reasonable to expect that parole would be granted at a hearing during the following years." 115 S. Ct. at 1604 (quoting Cal. Penal Code Ann. § 3041.5(b)(2) (West 1982)). Plaintiff contends that the Colorado statute does not require a finding that the prisoner would likely not be paroled during the subsequent years. Arguably, however, when the Board sets the next date for review in three years, it implicitly finds that release is not expected. Further, the Notice of Colorado Parole Board Action form contains categories the Board checks for its reasons for denying parole. In plaintiff's 1995 notice of denial the Board emphasized the circumstances of the offenses and that plaintiff "[n]eeds more time" before being paroled.

The Morales Court stated that under California law it is possible that the petitioner could obtain an administrative appeal. Although plaintiff argues that there is no administrative appeal, the record belies this, see Appellant's Supp. Brief, Add. 3 (letter from Parole Board Chairman stating he had received plaintiff's letter requesting reconsideration of his parole application before the three-year deferral date; Chairman indicated he

reviewed the file, forwarded the letter to the Attorney General, and that the deferral decision "stands").

The Morales Court also stated that if a drastic change of circumstances rendered a prisoner suitable for parole between hearings, an expedited hearing was possible. See 115 S. Ct. at 1604. Plaintiff argues Colorado has no such provision, but apparently neither did California; it was merely a possibility. Id. at 1610 n.9 (Stevens, J., dissenting). We also note that in upholding the constitutionality of the Colorado amendments the state court of appeals interpreted the law to be that "the Board retains the authority under these amendments to reconsider granting parole to such inmates on a more frequent basis, in its discretion, as particular circumstances involving individual inmates may warrant." Furnari, 914 P.2d at 511.

The Morales Court noted that in California, immediate release after a finding of suitability of parole is "theoretical," and that in many cases the release date is set several years after a finding of suitability. 115 S. Ct. at 1605. Thus, the Court reasoned that the ultimate date of release rarely would be affected by the change in the timing of suitability hearings; if the BPT determined a prisoner had been suitable for release two years before the hearing, it could expedite release and thus "make-up" for the delay in the hearing. Plaintiff argues that in contrast, there is no indication that the parole dates in Colorado are set so far ahead of actual release dates. We agree with plaintiff that in this respect his

case differs from <u>Morales</u>; however, we do not read <u>Morales</u> as requiring each factor it considered.

The recent Supreme Court opinion, <u>Lynce v. Mathis</u>, 117 S. Ct. 891 (1997), illuminates the holding of <u>Morales</u>. In <u>Lynce</u>, the Supreme Court held that canceling provisional early release credits given to reduce prison overcrowding violated the Ex Post Facto Clause. But the opinion distinguished <u>Morales</u>, indicating that merely changing scheduling of subsequent parole hearings, particularly if there is a "safety valve" for allowing earlier reconsideration of parole in individual cases, is not a constitutional violation.

> In Morales, we first relied on the fact that the amendment affected a class of prisoners--multiple murderers--who had little chance of being released on parole. Second, we found that the amendment did not alter the date of the prisoner's initial parole suitability hearing, and therefore only affected those initially deemed unsuitable for parole. Lastly, we recognized that the parole board "retain[ed] the authority to tailor the frequency of subsequent suitability hearings to the particular circumstances of the individual prisoner." 514 U.S. at ___, 115 S. Ct. at 1604. Simply put, we rejected the inmate's claim in Morales, because it could not be said with any certainty that the amended statutory scheme was more "onerous" than at the time of the crime.

117 S. Ct. at 898 n.16. <u>Lynce</u> thus indicates that the distinctions plaintiff attempts to make between <u>Morales</u> and the instant case are not enough to invalidate the Colorado amendments. <u>See also</u> <u>Hamm v. Latessa</u>, 72 F.3d 947 (1st Cir. 1995) (change from conducting parole hearings for life prisoners with "from and after" additional sentences at the fifteen-year mark to only requiring parole hearings after aggregating the parole-

ineligible portion of the life sentence (fifteen years) with the parole-ineligible portion of the "from and after" sentences did not violate the Ex Post Facto Clause; change resulted in a very small risk that petitioner would suffer increased punishment), cert. denied, 117 S. Ct. 154 (1996); Hill v. Jackson, 64 F.3d 163 (4th Cir. 1995) (change from allowing an extension of a hearing for "reasonable cause" to an automatic three-year extension for a limited class of prisoners was not ex post facto violation).

Because plaintiff has failed to show a sufficient risk that his effective punishment is more onerous under the new Colorado statute, we AFFIRM the district court's dismissal of plaintiff's complaint.